## GRAY v. STOLLEY.   (No. 6335.)

(Court of Civil Appeals of Texas.   Austin. March 30, 1921.)

**1. Trial �köö357—Answer to special issue held responsive.**

In an action on a note, an answer to special issue as to what induced defendant to sign the note, that the note was signed, for the consideration therein expressed is responsive, being equivalent to a statement that the consideration recited was true.

**2. Appeal and error �köö1002—Verdict on conflicting evidence not disturbed.**

A verdict on conflicting evidence will not be disturbed on appeal.

**3. Bills and notes �köö534—Allowance of attorney's fee proper in action on note.**

In an action on a note brought by trustee to whom it had been indorsed, where judgment went for plaintiff, it was proper to enter judgment for attorney's fees, despite defendant's contention that there was no evidence, either that the note had been placed in the hands of an attorney for collection, or that the amount allowed was reasonable.

**4. Appeal and error �köö978(2)—Denial of new trial for misconduct of jury reviewed only in case of abuse of discretion.**

While the discretion of a trial judge in refusing to set aside a verdict for improper conduct of a jury is not an arbitrary one, and

is subject to review by the appellate courts, the action of the trial court will be reviewed only where there has been a clear abuse of discretion.

**5. Evidence** ⬡⟾158(28)—**Bank account admissible, despite objection that it was not the best evidence.**

In an action on a note given by one copartner to another, where it was asserted that over $50,000 had been charged to the payee copartner for which the maker had not accounted, and drafts and checks claimed to have been charged to the payee's account were introduced in connection with the payee's testimony, the entire bank account of the payee was admissible, despite the contention that it was not the best evidence, to show that checks and drafts were not charged to his account as claimed.

**6. Evidence** ⬡⟾155(8)—**Partnership** ⬡⟾217(2) **—In suit on note to copartner, bank account of payee admissible to show checks and drafts were not charged against the account as claimed.**

In an action on a note given by one copartner to another, where it was claimed as to the consideration that the maker had not accounted to the payee partner for about $50,-000, and checks and drafts were introduced in support of the payee's testimony to that effect, the entire bank account of the payee was admissible, falling within the rule that one person may introduce the remainder of an account when the other party introduces a part thereof, and was also admissible to show that such drafts and checks had not been charged against his account as claimed.

Appeal from District Court, San Saba County; N. T. Stubbs, Judge.

Action by Otto Stolley, trustee, against G. W. Gray. From judgment for plaintiff, defendant appeals. Reversed and remanded.

N. C. Walker, of San Saba, for appellant. Flack & Flack, of Menard, Walters & Baker, of San Saba, Ocie Speer, of Fort Worth, and G. E. Lockhart, of Tahoka, for appellee.

JENKINS, J. Appellee, as trustee, sued appellant to recover upon a promissory note for the sum of $102,100. The defensive pleas were a denial of the execution of the note; the further denial that the same was based upon any consideration; and that the note was executed by J. E. Odiorne, the payee in said note, or by some other person unknown to appellant, to be used and was used by Odiorne to secure the dismissal of indictments pending in the district court of Lampasas county, Tex., against Odiorne and his wife.

The case was submitted to the jury upon three special issues. The questions and answers of the jury are, in substance, as follows:

(1) Did G. W. Gray execute the note sued on? Answer: "Yes."

(2) At the date the note was signed, if at all, was Gray indebted to Odiorne? Answer: "He was."

(3) What induced or moved Gray to execute said note? Answer: "This note was signed for the consideration therein expressed."

Upon this verdict, the court rendered judgment for appellee for the full amount of the note, with interest and attorney's fees, to be applied by appellee to the payment of the claims of certain beneficiaries whose claims aggregated over $70,000 and interest, and the balance was adjudged to be paid to Mrs. J. E. Odiorne; the attorney's fees being adjudged to be paid to certain named attorneys for plaintiff.

The evidence upon each of the issues submitted to the jury was sharply conflicting. The note was dated November 20, 1918, and was payable, four months after date, to the order of J. E. Odiorne—

"for value received. Upon its face, the note contained this recital: 'This note is given in a final settlement between G. W. Gray and J. E. Odiorne, for all differences growing out of their partnership business in 1915, and also to pay J. E. Odiorne the amount agreed to be paid to him for turning back the 20-year lease on 32,000 acres of G. W. Gray's land at 30 cents per acre per annum, from June 1, 1917, and for turning back to G. W. Gray about 6,000 head of cattle sold by G. W. Gray to J. E. Odiorne at same date of said lease. After allowing all credits and offsets, including cattle sold by G. W. Gray to J. E. Odiorne, and sold by J. E. Odiorne to others, there is yet this amount due from G. W. Gray to J. E. Odiorne.' "

The note purported to be signed by G. W. Gray, and contained an indorsement of date January 20, 1919, to the order of appellee, as trustee, to be applied to the payment of certain claims owing by Odiorne, and the remainder to be paid to Mrs. J. E. Odiorne, or order.

**Opinion.**

[1] It is claimed by appellant that the answer of the jury to special issue No. 3 was not responsive, since the note not only contained the promise to pay the principal sum of $102,100, with interest and attorney's fees, but also stated other considerations. We think the objection is hypercritical, and that the answer of the jury fairly disclosed that it was intended to reply that the consideration recited in the note was true. It was as definite as if the jury had particularly enumerated the consideration expressed; therefore we overrule this contention.

It is also urged that the answer to special issue No. 3 was in the face of the great preponderance of the evidence, and manifestly shows that injustice has been done by the rendition of the verdict and judgment. It is claimed that, in view of the evidence, under

all the facts and circumstances of the transaction, it staggers credulity to believe that appellant would have signed the note for the consideration expressed. For these reasons, we are asked to revise the action of the trial court in overruling the motion for new trial, and to reverse the case.

[2] Without discussing the rules laid down by our courts for setting aside the verdict of a jury or judgment of a trial court upon questions of fact, we are content to say that a careful consideration of the question convinces us that we would not be authorized to disturb the verdict or judgment. It is immaterial what we may believe about the weight of the evidence or what conclusion we might have arrived at, for the evidence was conflicting, and it was the peculiar province of the jury to determine the credibility of the witnesses and the weight to be given their testimony. Therefore the assignments raising these questions are overruled.

[3] Another point presented by the appeal is whether the court erred in entering judgment for the attorney's fees, it being claimed that there was no evidence that the note had been placed in the hands of an attorney for collection, or that the amount allowed was reasonable. This question has been decided adversely to appellant, under the principles announced in the following cases: Bonnell v. Prince, 11 Tex. Civ. App. 399, 32 S. W. 855; First Natl. Bank v. Robinson, 104 Tex. 166, 135 S. W. 372; Id., 135 S. W. 1115; Lock v. Bank, 165 S. W. 537; Duenkel v. Bank, 222 S. W. 670; and McCaulley v. Bank, 175 S. W. 728. Under the authority of the cases just cited, the assignments relating to attorney's fees are overruled.

[4] Appellant complains of the refusal of the trial court to grant a new trial, because there was evidence upon the hearing of the motion to show that some of the jurors were not qualified jurors, and were biased and prejudiced, and that they were influenced by improper considerations not in evidence. We do not think it would be profitable to discuss this evidence in detail, nor the reasons why we do not think we would be justified in reversing the case for the failure of the trial court to set aside the verdict upon these grounds. The particular matters, disclosed by the hearing of which appellant complains, were, in substance, these, that it was stated by some juror that the jury were "trying to settle the differences between two of the biggest crooks in the county," and that a discussion arose in the jury room, in which something was said to the effect that some of the jurors believed that the $100,000 note, for which the note in suit was given as a renewal, was executed for the purpose of enabling appellant, Gray, to defraud his wife, with whom he had had some trouble and a separation agreement.

We recognize fully that the discretion of a trial judge in refusing to set aside a verdict for improper conduct of a jury is not an arbitrary one, but that it is subject to review and revision by the appellate courts. This power to revise, however, should not be exercised, and the judgment reversed, save where there has been a clear abuse of discretion. We have given the testimony of the jurors on this point very careful consideration, and have reached the conclusion that it has not been shown that the trial court improperly exercised the discretion permitted by law. Apart from the inferences which the jury were entitled to draw from the testimony, we are not convinced that the matters mentioned can reasonably be said to have influenced the jury in reaching their decision, especially in view of the sharply conflicting evidence, generally, given by appellant and J. E. Odiorne. We conclude that these assignments should also be overruled.

[5, 6] In the last assignment of error, appellant complains of the refusal to permit him to introduce in evidence the bank account of J. E. Odiorne, in a San Saba bank, showing the sums of money deposited to the account of Odiorne, and paid out by him during the time he and appellant were copartners in the cattle business.

It is specially urged that because Odiorne handled the financial end of the business and kept no proper books of account of the partnership, and having given testimony to the effect that over $50,000 had been charged to his, Odiorne's, account, for which he had not been repaid by Gray, and appellant having introduced in evidence a number of checks and drafts in support of such contention, the bank account at the bank became the best evidence, and also was admissible as affecting the credibility of Odiorne. The objections upon which the bank account was excluded were that the account was not the best evidence upon the issue, in that the original charge and credit slips would be the best evidence, and that the account was also incompetent, irrelevant, and immaterial.

Appellant points out that not only did Odiorne testify that he wrote the words, "Charge J. E. Odiorne," on checks signed by Gray, aggregating over $60,000 during the month of April, 1915, but that one of his attorneys on the stand testified and read to the jury from sheets from the bank books, containing the accounts of Odiorne, Gray, and the firm of Odiorne & Gray, showing various amounts charged to Odiorne's account, and that some of them had not been repaid to Odiorne. The bank account in question is shown by the bill of exceptions to consist of the deposits of J. E. Odiorne in such bank from August, 1914, to July, 1915, and checks against his deposits for about the same period of time. There was an agreement of the parties to use the various sheets of the bank books, to show the account of Odiorne with the San Saba National Bank for the year 1915, and also the accounts of Gray and the

firm of Gray and Odiorne for said year. As stated above, appellee had introduced some of these accounts, and his attorney had read therefrom to the jury. It is claimed by appellant—and such bank account seems to support the claim—that the large checks given by Gray in April, 1915, upon which Odiorne indorsed the notation to charge to his account, were not, in fact, charged against his account, and also that some of the items which Mr. Baker, attorney for appellee, read to the jury as being charged to, but not repaid to, Odiorne, would be circumstantially shown by this bank account not to have been charged at all against Odiorne, or that were repaid to him. It is not claimed these facts would conclusively show that Odiorne's contention was not correct, but that they would tend to do so, and also to impeach Odiorne. With this contention we agree in substance, and believe that the court erred, to the material prejudice of appellant, in not admitting this testimony. In view of the other evidence admitted, and in connection with the drafts, checks, credit slips, etc., it cannot be said that this bank account was objectionable as not being the best evidence. Furthermore, it would seem to fall within the spirit of the rule that where one party introduces a part of a document or account, the adverse party may introduce the remainder. It may be possible that this account contained some irrelevant data, but even that is not disclosed, and we do not think it is shown to be of such character as was calculated to so confuse the jury, or to render the account inadmissible.

The issue upon which this testimony bore especially was the consideration for the note. Appellee did not see fit to rest upon the testimony of Odiorne that the consideration for the note was as recited therein. He offered the testimony of Odiorne upon specific items of large amounts, and read from the bank books to show, in detail, that Gray was indebted to Odiorne in excess of over half the amount of the note, at the termination of the partnership. This very fact may have been the controlling consideration in determining that Gray was indebted to Odiorne, and also may have strongly influenced them in deciding the other two issues. They may have been unwilling to accept Odiorne's general statement, but when he was apparently supported by documents and records of the bank, this may have thrown the scale in appellee's favor. We conclude that the testimony was admissible, especially upon the issue of consideration, and that it was also competent generally on the question of the credibility of Odiorne, as tending to impeach him. Under the unusual circumstances of this case, as shown by the record, we believe that there was material error in the exclusion of this evidence, for which the case must be reversed.

This disposes of all the questions present-ed by the appeal, and, for the error indicated, the judgment will be reversed, and cause remanded.

Reversed and remanded.